IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAMONE WOODS, | ) |
| | ) |
|     Plaintiff, | )   Case No. 2:20-cv-001376 |
| | ) |
| vs. | ) |
| | ) |
| LT. A.J. MORRIS, CO MISHLER, | ) |
| and BRANDON ONDERKO, | ) |
| | ) |
|     Defendants. | ) |

### MEMORANDUM OPINION[1]

In this action, *pro se* Plaintiff Shamone Woods ("Woods") has asserted various claims against Defendants Lt. A.J. Morris, CO Mishler and Brandon Onderko arising out of an incident at the State Correctional Institution at Greene ("SCI Greene"), where Woods is incarcerated. Presently pending before the Court is Defendants' Partial Motion to Dismiss (ECF No. 66) Woods' Second Amended Complaint. In their motion, Defendants seek dismissal of the claim of intentional infliction of emotional distress and professional negligence against Defendants Mishler and Onderko.

For the reasons that follow, Defendants' partial motion to dismiss will be granted.

### I.  Relevant Procedural History

Wood originally commenced this action in the United States District Court for the Middle District of Pennsylvania. It was subsequently transferred to this Court in September 2020. After Defendants filed a Motion to Dismiss (ECF No. 24), Woods filed an Amended Complaint (ECF No 27). Defendants then moved to dismiss the Amended Complaint (ECF No. 36). In a Report

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case as authorized by 28 U.S.C. § 636. *See* ECF Nos. 17, 23, and 69.

1

and Recommendation (ECF No. 45) that was adopted by District Court Judge Wiegand on August 5, 2021 (ECF No. 46), Defendants' motion to dismiss was granted in part and denied in part.

Woods' subsequent motion to further amend his amended complaint (ECF No. 62) was granted in part on March 28, 2022 (ECF No. 63).  As relevant to the resolution of the pending motion, the Court directed the Clerk of Court to substitute Brandon Onderko in place of the John Doe Defendant. The Court also struck certain claims and the Department of Corrections as a party because it was previously dismissed with prejudice pursuant to the Court's August 5, 2021, Order.

Thus, the only remaining defendants are defendants Morris, Mishler and Onderko who are sued in their individual capacities. Of the two remaining claims, at issue here is Count I, which is a claim for intential infliction of emotional distress ("IIED") and professional negligence against Mishler and Onderko.[2] The partial motion to dismiss has been fully briefed and is ripe for decision.

For the reasons below, the Court will grant Defendants' Partial Motion to Dismiss.

## II. Factual Allegations

On August 21, 2018, while Woods was incarcerated at the SCI-Greene, Onderko and Mishler entered Woods' cell and ordered him to be strip searched. *See* ECF No. 64, ¶ 10.  After Mishler and Onderko performed the strip search, they handcuffed Woods and placed him approximately one foot from his cell door while they performed a cell search. *See id.* ¶ 11.  While standing adjacent to his cell he heard the officers rummaging through his belongings.  The officers came across legal papers and took notice that Woods was suing the prison doctor. *Id.* ¶¶ 12-13. Woods alleges that the officers began to throw his belongings out of his cell. *Id.* ¶ 16.  When he

---

[2] The other remaining claim in this action is a First Amendment claim of retaliation. The Court has original jurisdiction over this claim and supplemental jurisdiction over the state-law claim. 28 U.S.C. § 1367(a).

asked why the officers were throwing his belongings from the cell, Onderko responded, "Why are you sueing [sic] the Doc." *Id.* ¶¶ 20-21. Plaintiff alleges that the officers removed all the pictures from his walls and removed legal documents pertaining to his pending lawsuit against Dr. Denise Smyth. *See id.* ¶¶ 24-26.

Woods states that the family photographs taken and allegedly lost are irreplaceable and that he suffers irreparable emotional harm from this loss. *See id.* ¶¶ 48-53. Woods also states that the lost legal papers, included a Certificate of Merit which was required for the litigation against Dr. Smyth, and his lawsuit was later dismissed because he could not produce the Certificate of Merit. *See id.* ¶¶ 54-58.

On August 30, 2018, Woods submitted a grievance about the cell search conducted by Mishler and Onderko. *See id.* ¶ 29. Woods states that he has fully exhausted the grievance process. *See id.* ¶¶ 29-36.

### III.   Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5 C. Wright & A. Miller, Federal Practice, and Procedure § 1216, pp. 235-236 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)). In making this determination, the court must accept as true all well-pled factual

allegations in the complaint and view them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id*. (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Emp. Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *see also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court should "generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), *abrogated on other grounds by Twombly,* 550 U.S. at 557, *as recognized in In re Lipitor Antitrust Litig.,* 868 F.3d 231, 249 (3d Cir. 2017). The Court may consider facts and make inferences where it is appropriate. At the same time, "any pleading must still contain sufficient factual allegations that, when accepted as true, 'state a claim to relief that is plausible on its face.'" *Heffley v. Steele*, No. 2:17-CV-01624, 2019 WL 5092127, at *4 (W.D. Pa. Oct. 11, 2019), *aff'd*, 826 Fed. Appx. 227 (3d Cir. 2020) (citations omitted). *See also Baez v. Mooney*, No. 1:20-CV-0009, 2021 WL 816013, at *3 (W.D. Pa. Feb. 8, 2021), *report and recommendation adopted*, No. 1:20-CV-9, 2021 WL 808726 (W.D. Pa. Mar. 3, 2021).

Finally, because Woods is representing himself, the allegations in the Complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read a *pro se* litigant's pleadings to state a valid claim upon which relief could be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *See Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

**IV.   Discussion**

Defendants move to dismiss Woods' state-law claim against defendants Mishler and Onderko, which is identified in the complaint as a claim of "intentional infliction of emotional

distress, professional negligence." Specifically, Woods alleges that Mishler and Onderko conducted a cell search unprofessionally and in a manner that intentionally inflicted emotional distress. *See* ECF No. 64, p. 6, Count I.

In Defendants' partial motion to dismiss, they assert that Woods failed to state a claim for negligence or IIED because he failed to plead each of the elements of the claims. The Court addresses these issues below.[3]

### A.     Woods' Negligence Claim

Although Woods states that he is asserting a claim of professional negligence, his pleading fails to state a claim for this tort. Pursuant to Pennsylvania Rule of Civil Procedure 1042.1, a claim for professional liability can be brought only by a patient or client against a "licensed professional," As stated in Rule 1042.1:

> (a) The rules of this chapter govern a civil action in which a professional liability claim is asserted by or on behalf of a patient or client of the licensed professional against (1) a licensed professional. . .
>
> \*          \*          \*
>
> (c) As used in this chapter, "licensed professional" means
> (1) any person who is licensed pursuant to an Act of Assembly as
> > (i) a health care provider; (ii) an accountant; (iii) an architect; (iv) a chiropractor; (v) a dentist; (vi) an engineer or land surveyor; (vii) a nurse; (viii) an optometrist; (ix) a pharmacist; (x) a physical therapist; (xi) a psychologist; and (xii) a veterinarian.
> (2) an attorney at law; and
> (3) any professional described in paragraphs (1) and (2) who is licensed by another state.

Pa.R.C.P. No. 1042.1.

Neither defendant Mishler nor Onderko, both of whom are corrections officers, meet the definition of a "licensed professional" under Pennsylvania law. In addition, Woods is not a

---

[3] Since Count I can be liberally interpreted to plead separate causes of action for negligence and for IIED, both causes of action will be addressed.

6

"patient or client" of either defendant. Thus, Woods cannot assert a claim of professional negligence against either Mishler or Onderko.

Nonetheless, the Court will liberally construe Woods' claim as one for negligence. "[I]n order to maintain an action for negligence, a plaintiff must prove: (1) the defendant had a duty or obligation recognized by law; (2) the defendant breached that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Palmer v. Doe*, No. 2451 C.D. 2015, 2016 WL 2587417, at *4 (Pa. Commw. Ct. May 5, 2016) (citing *Page v. City of Phila.,* 25 A.3d 471, 475 (Pa. Commw. Ct. 2011)). Defendants argue that Woods failed to adequately allege the requisite elements of negligence. In addition, they assert, the Second Amended Complaint lacks any facts that support a claim that defendants owed any duty to Woods or how any such duty was breached. *See* ECF No. 67, p. 5. Woods' response does not address these issues.[4]

In *Palmer v. Doe*, a prisoner brought a suit in negligence against corrections officers who packed his belongings when he was transferred to the Restricted Housing Unit because his belongings were later lost or destroyed. The Court found the plaintiff had sufficiently set forth elements for a negligence claim stating:

> Palmer further alleged that, after his release from the RHU, he received his personal property without the required property inventory sheet. He realized several items were missing, including the desk lamp and typewriter ribbons, and he notified BA Unit team Sergeant Datilio, Officer D'Angelo and Property Sergeant Myers. Palmer also alleged Sergeant Doe, CO1 Disabiela, Sergeant Myers and Officer Doe had a duty to process his personal property with another employee and both sign the property inventory sheet, and that his personal property was lost as a result of the Defendants' nonfeasance.

---

[4] In his Response (ECF No. 88), Woods raises news claims against new defendants and asserts factual allegations that are not included in the Second Amended Complaint. These allegations cannot be considered in resolving the Motion to Dismiss.

> As alluded to in Palmer's complaint, his personal property became the Defendants' responsibility upon his involuntary transfer to the RHU. *See Samuels v. Walsh* (Pa.Cmwlth., No. 318 C.D. 2014, filed November 17, 2014), 2014 WL 10298879 (unreported). Palmer sufficiently alleged his personal property was in the prison officials' care, custody or control. *Id.* Thus, he is not precluded from pursing his claim for negligence against Sergeant Doe, CO1 Disabiela, Sergeant Myers and Officer Doe for the loss of his property.

*Palmer*, 2016 WL 2587417 at *4–5. Thus, contrary to Defendants' position, the Court finds that depending on the surrounding circumstances, corrections officers owe a duty of care to prisoners when handling their prisoner belongings.

Here, however, Mishler and Onderko's actions of taking Woods' personal property are not alleged to have been negligent or inadvertent. Rather, they are alleged to have been intentionally done in conjunction with a cell search. *See* Second Amended Complaint ¶¶ 15-27. Indeed, as part of the same claim, Woods claims that these actions represent an intentional infliction of emotional distress. "A defendant does not act negligently where he intended to bring about the harm that resulted from his action." *Williams v. Dep't of Corr.*, No. 1908 C.D. 2015, 2016 WL 2755919, at *2 (Pa. Commw. Ct. May 12, 2016) (citing *Steiner v. City of Pittsburgh,* 97 Pa.Cmwlth. 440, 509 A.2d 1368, 1370 (Pa. Commw. Ct. 1986) (*en banc*) (holding that the appellant failed to state a claim for negligence where her claim was "couched in terms of willful and intentional conduct, rather than in negligence"). The court in *Williams* found plaintiff failed to state a claim for negligence with respect to items that corrections officers allegedly removed from his cell because he claimed that the officers acted intentionally. *See Williams,* 2016 WL 2755919 at * 2.

According to the facts pleaded by Woods, Mishler and Onderko intentionally destroyed his family photographs and litigation materials to deprive Woods of his personal property. Intentional

conduct cannot support a claim of negligence. Therefore, because Woods has failed to state a claim for negligence, Defendants' motion to dismiss this claim will be granted.

B. <u>Woods' Claim of Intentional Infliction of Emotional Distress[5]</u>

Woods alleges that by discarding his personal pictures and legal papers, Mishler and Onderko intended to cause him to incur monetary damages and the "loss of life's pleasures." Defendants claim that this claim must be dismissed because Woods has not satisfied the elements of a plausible claim for IIED.

To state a claim of IIED under Pennsylvania law, "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Snider v. Pennsylvania DOC,* 505 F. Supp. 3d 360, 445 (M.D. Pa. 2020). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Miniscalco v. Gordon*, 916 F. Supp. 478, 481 (E.D. Pa. 1996) (citing Restatement (Second) of Torts § 46, comment d.). "As noted by

---

[5] The Court notes that the argument that Woods failed to state an IIED claim against Defendant Mishler was available but not raised by Defendants in their first motion to dismiss, therefore, Defendants are barred from asserting that argument in their pending successive motion to dismiss. *See* Fed.R.Civ.P. 12(g)(2); *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 319-22 (3d Cir. 2015). The Court may nonetheless, *sua sponte,* consider whether Woods failed to state an IIED claim against Defendant Mishler pursuant to the screening provisions of the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996). *See, e.g.*, *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109 n.11 (3d Cir. 2022) (the PLRA's screening provisions at 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c) are "applicable throughout the entire litigation process.") (internal quotation and citation omitted); *Banks v. County of Allegheny*, 568 F. Supp. 2d 579, 588-89 (W.D. Pa. 2008) (the court may *sua sponte* rest its dismissal upon a ground not raised in a motion to dismiss pursuant to the screening provisions of the PLRA). The Court will evaluate the IIED claim against Mishler because Woods had notice and the opportunity to respond to the identical argument as it pertains to Defendant Onderko. It is also in the interest of judicial economy to resolve the matter now because Defendant Mishler could simply reassert the same argument in a Rule 12(c) motion for judgment on the pleadings.

the Third Circuit, Pennsylvania courts have been reluctant to find conduct so outrageous as to permit recovery for this tort." *Id.* (citing *Clark v. Township of Falls,* 890 F.2d 611, 623 (3d Cir. 1989)). "Pennsylvania courts also require a plaintiff asserting a claim for intentional infliction of emotional distress to provide evidence of a physical injury caused by the defendant's conduct." *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 646 (E.D. Pa. 2014) (citing *Hart v. O'Malley,* 647 A.2d 542, 554 (Pa. Super. Ct. 1994) (finding that allegation of sleep deprivations, recurring nightmares and other physically disabling manifestations were sufficient to state a claim).

In *Vasquez v. Wingard*, 847 Fed.Appx. 108 (3d Cir. 2021), the prisoner plaintiff asserted a claim of IIED. His claim was based on his allegations that he was housed with a cellmate after he said he "did not feel comfortable" with a new cellmate; he was dissatisfied with the grievance process; he was not treated properly by the prison psychologist; and he endured disparaging remarks by the guards. The Court dismissed his claim stating, "[h]is intentional infliction of emotional distress claim fails because Vasquez did not show that the conduct was sufficiently 'extreme and outrageous' or that the resulting emotional distress was 'severe.'" *Vasquez*, 847 Fed.Appx. at 111 (citing *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979)); *Gillmore v. Lamas*, No. 19-CV-5571, 2021 WL 5882093, at *10 (E.D. Pa. Dec. 10, 2021) (granting a motion to dismiss the IIED claim when a correctional officer forced plaintiff to strip in front of another incarcerated person, was alleged to have made sexual gestures and a lewd comment about the plaintiff's genitalia, and plaintiff claimed the incident left him feeling violated and humiliated). "The bar for the level of extreme and outrageous conduct needed to sustain an IIED claim is very high.

Here, in considering the allegations made by Woods, the Court concludes that even viewing this claim in the most favorable light, he has failed to state a claim upon which relief may be granted. While, taken as true, the actions of Mishler and Onderko in destroying Woods' personal property are hardly commendable, they do not represent such extreme or outrageous conduct to be utterly intolerable in a civilized community. Further, while Woods alleges that he suffered certain damages, he fails to plead that the loss of his family photos caused severe emotional distress. Rather, he merely claims that he suffered some undefined "irreparable harm," presumably because he could not replace the discarded photos. Moreover, while the destruction of his litigation paperwork is alleged to have deprived him of a monetary recovery in a litigation matter which, in turn, caused the "loss of lifes [sic] pleasures," these allegations do not support a claim of severe emotional distress with the requisite component of a physical injury. Allegations that he sustained "costs, losses and damages" similarly do not adequately plead severe emotional distress.

Thus, Woods has failed to state a claim for intentional infliction of emotional distress and Defendants' motion to dismiss this claim will be granted.

**V.    Amendment**

Having found that the Second Amended Complaint fails to state a claim of negligence or IIED, the Court must then determine whether further amendment should be permitted or if it would be futile. *See Hockenberry v. SCI Cambridge Springs/Pennsylvania Dep't of Corr.*, No. 1:18-CV-00325, 2019 WL 2270345, at *3 (W.D. Pa. May 28, 2019) (stating "[t]he U.S. Court of Appeals for Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment unless an amendment would be inequitable or futile"). The Court concludes that further amendment would be futile. Woods has already amended his complaint twice and the facts alleged, which fully set forth the occurrence

11

that purports to form the basis of his causes of action, cannot support the claim or claims he has asserted. Thus, further amendment will not be permitted.

## VI.     Conclusion

For the foregoing reasons, Defendants' Partial Motion to Dismiss (ECF No. 66 ) will be granted.

An appropriate order will follow.

BY THE COURT:

Dated: October 20 , 2022

s/ Patricia L Dodg
PATRICIA L. DODGE
United States Magistrate Judge