IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAMONE WOODS, | ) |
| | ) |
| Plaintiff, | )   Civil Action No. 2:20-cv-01376 |
| | ) |
| vs. | ) |
| | ) |
| LT A.J. MORRIS and | ) |
| BRANDON ONDERKO, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION[1]

Pro se plaintiff Shamone Woods ("Woods") commenced this civil rights action under 42 U.S.C. § 1983 against various defendants. His claims arise out of a search of his cell at the State Correctional Institution at Greene ("SCI-Greene") when some of his belongings were allegedly taken and thrown away. Pending before the Court is a Motion for Summary Judgment (ECF No. 95) filed by defendants Lt. A.J. Morris ("Morris") and Brandon Onderko ("Onderko"). As discussed below, their motion will be granted.

**I.   Relevant Procedural History**

After Woods initially filed his Complaint on July 20, 2020, in the Middle District of Pennsylvania (ECF No. 1), his case was transferred to the Western District of Pennsylvania (ECF No. 11). Woods filed an Amended Complaint (ECF No. 27) which added certain defendants and did not include other defendants who were previously named. Woods' Amended Complaint stated a claim against the Pennsylvania Department of Corrections ("DOC"), SCI-Greene, Sgt. Bowlin,

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case as authorized by 28 U.S.C. § 636 (ECF Nos. 17, 23, 69). Thus, the undersigned has the authority to decide dispositive motions and enter final judgment.

1

Corrections Officer ("CO") Mishler, and Lt. A.J. Morris. The Amended Complaint also named a John Doe defendant, who later was identified in Woods' Second Amended Complaint (ECF No. 64) as Onderko, a member of the Correctional Emergency Response Team ("CERT").

In resolving a Motion to Dismiss (ECF No. 36) and a Partial Motion to Dismiss (ECF No. 66), the Court dismissed the DOC, SCI-Greene, Sgt. Bowlin, and CO Mishler as defendants (ECF Nos. 45, 46, 89). The Court also dismissed all official capacity claims, the "breach of policy claim" in Count 1, the "confiscation of Plaintiff's property and failure to investigate" claim in Count 2, and the state claims of professional negligence and intentional infliction of emotional distress in Count 3 (ECF Nos. 45, 46, 89).[2] The only remaining claims in this case are the First Amendment retaliation claims (Count 4) against Morris and Onderko (collectively "Defendants") in the Second Amended Complaint.[3]

Defendants filed a Motion for Summary Judgment (ECF No. 95) and Brief (ECF No. 96) as well as a Concise Statement of Material Facts ("CSMF") (ECF No. 97) and an Appendix to the CSMF (ECF No. 98). Defendants argue that Woods failed to establish a claim of retaliation against

---

[2] The Second Amended Complaint labeled the "breach of policy" claim as Count 1, but also referred to the separate state-law claims of professional negligence and intentional infliction of emotional distress as Count 1. Similarly, it labeled the "confiscation of Plaintiff's property and failure to investigate" claim as Count 2 but also referred to the separate retaliation claims as Count 2. To avoid confusion, the Court refers to Plaintiff's claims of professional negligence and intentional infliction of emotional distress as Count 3, and his retaliation claims as Count 4.

[3] Defendants contend that "[o]ther than Defendant Onderko's name being listed directly under the count, there is no other mention of him throughout the allegations" contained in the Second Amended Complaint that suggest that he was involved in the alleged retaliation. (ECF No. 96, p. 4). Defendants are incorrect. The Second Amended Complaint identifies the John Doe defendant as the individual who entered Woods' cell, made remarks about Woods' lawsuit against the prison doctor, and kicked his belongings in front of his cell. (ECF No. 64, ¶¶ 10, 15, 64). When the Court granted Plaintiff leave to filed the Second Amended Complaint, the Court directed that Defendant Onderko's name was substituted in place of the John Doe defendant. (ECF No. 63.)

2

either Defendant.

The Court directed Woods to respond to the Motion for Summary Judgment by February 10, 2023 (ECF No. 99). Woods failed to respond, request an extension of time or otherwise communicate with the Court. As a result, the Court extended its deadline for Woods to respond until March 10, 2023. However, Woods has not responded to the summary judgment motion or otherwise communicated with the Court. Thus, in accordance with the applicable procedural rules, the facts stated in Defendants' CSMF are undisputed.

## II.     Relevant Factual Background[4]

Woods alleges in his unverified Second Amended Complaint states that Onderko, a CERT member who was part of the two-man team that searched Woods' cell, threw out Woods' personal photographs and legal paperwork. (ECF No. 64, pp. 2-4). Woods also alleges that Onderko made statements about Woods' lawsuit against the prison doctor including, "Look he's suing the Doc.", and "Why are you suing the Doc?" (ECF No. 64, ¶¶ 15, 21, 64).

However, it is uncontroverted that on August 21, 2018, CERT team members conducted an institution-wide cell search at SCI-Greene. (ECF Nos. 97, ¶¶ 3, 4; 98-1; 64, ¶ 10). Woods' cell was searched, but the CERT team members did not confiscate any of his legal materials. (ECF No. 97, ¶¶ 5, 6).

Woods submitted Grievance #756544 on August 30, 2018 in which he asserted that his legal documents had been thrown away during the search. (ECF No. 98-1). Defendant Morris performed the initial review of Grievance #756544 (ECF No. 98-1, p. 8). Woods claims that

---

[4] The facts are based on Defendants' Concise Statement of Undisputed Material Facts (ECF No. 97). The Second Amended Complaint is not verified.

3

Morris made a statement to him that "he should drop the lawsuit and things will stop happening." (ECF No. 64, ¶ 60). Woods further alleges that shortly after Morris' comment, he was removed from medical "z-code" status, which allowed him a single cell placement, and he no longer had a right to have priority standing for the bottom bunk. (ECF No. 64, ¶ 61). Further, he claims that Morris directed the staff to ignore Woods' sick call slips. (ECF No. 64, ¶ 62-63).

As the uncontroverted facts demonstrate, however, Woods did not have "z-code" or "bottom bunk" status, nor was he shunned by medical staff when attempting to submit sick call slips. (ECF No. 97, ¶¶ 8, 9). Woods' medical records from August 2018 through February 2019 as proof that he did not have a medical "z-code" or bottom bunk designation. (ECF No. 98-2 (Exhibit B)).

**III.   Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine, material dispute and an entitlement to judgment. *See id.* at 323. This showing does not necessarily require the moving party to disprove the opponent's claims. Instead, this burden may often be discharged simply by pointing out for the court an absence of evidence in support of the non-moving party's claims. *See id.*; *see, e.g., Spierer v. Rossman*, 798 F.3d 502, 508 (7th Cir. 2015).

4

Once the moving party has met its initial burden, then the burden shifts to the non-moving party to demonstrate, by affidavit or other evidence, "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A non-moving party must "go beyond the pleadings" and show probative evidence creating a triable controversy. *Celotex*, 477 U.S. at 324. An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In following this directive, a court must take the facts in the light most favorable to the non-moving party and must draw all reasonable inferences and resolve all doubts in that party's favor. *See Hugh v. Butler Cnty. Fam. YMCA*, 418 F.3d 265, 267 (3d Cir. 2005); *Doe v. Cnty. of Ctr., Pa.*, 242 F.3d 437, 446 (3d Cir. 2001).

Although courts must hold *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), at the summary judgment stage a *pro se* plaintiff is not exempt from his burden of providing some affirmative evidence, not just mere allegations, to show that there is a genuine dispute for trial. *See, e.g.*, *Barnett v. NJ Transit Corp.*, 573 F. App'x 239, 243 (3d Cir. 2014) (holding that the *pro se* plaintiff was still "required to designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories…sufficient to convince a reasonable fact finder to find all the elements of her prima facie case") (citation and quotation omitted); *Siluk v. Beard*, 395 F. App'x 817, 820 (3d Cir. 2010) ("[T]he right of self-representation does not exempt a party from compliance with relevant rules of procedural law."); *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir.

2013) (*pro se* plaintiffs "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.")

### IV. Discussion

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983 does not create substantive rights but instead "provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

Woods' § 1983 retaliation claims assert a violation of his Constitutional rights under the First Amendment. To prevail on a retaliation claim a plaintiff must show (1) constitutionally protected conduct; (2) an adverse action by prison officials "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights"; and (3) "a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Rauser v. Horn,* 241 F.3d 330, 333 (3d Cir. 2001) (quoting *Allah v. Seiverling,* 229 F.3d 220, 225 (3d Cir. 2000)) (alteration in original); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).

Woods claims that Onderko retaliated against him when, during a cell search, he discovered that Woods had brought a lawsuit against the prison doctor. According to Woods, Onderko threw away Woods' personal pictures and legal paperwork during the search of his cell. Later, Woods claims, Morris learned of the lawsuit through the grievance process and removed Woods' privileged status for cell and bunk placement and directed staff to ignore Woods' sick call slips.

Defendants argue that based upon the undisputed facts of record, Woods cannot establish

a claim of retaliation against either defendant. While Defendants concede that Woods' lawsuit against the prison doctor is a constitutionally protected right, they correctly contend that there are no genuine issues of material fact that support the two remaining requisite elements of a retaliation claim against either Onderko or Morris.

First, as it relates to Onderko, it is undisputed that CERT team members conducted an institution-wide cell search at SCI-Greene. While Woods' cell was searched as part of this process on August 21, 2018, Onderko did not confiscate any materials from Woods' cell during this search. Thus, there is no evidence in the record of any adverse action taken by Onderko in response to any knowledge he may have had about Woods' lawsuit against the prison doctor. It necessary follows that no causal link between the lawsuit and Onderko's conduct has been established. As such, the uncontroverted facts demonstrate that there is no basis for liability on the part of Onderko and he is entitled to judgment in his favor.

Woods' claims against Morris are similarly unavailing. Woods claims that Morris retaliated against him after he filed a grievance on August 30, 2018 by removing him from medical "z-code" status, which eliminated his single cell placement and priority standing for the bottom bunk. However, Woods did not have "z-code" status or bottom bunk priority between August 2018 through February 2019. Further, Woods' allegations that Morris directed the staff to ignore Woods' sick call slips are unsupported. As reflected in Woods' medical records, he was seen by medical staff at least once a month, if not more, from August 2018 through February 2019. Thus, even assuming that Morris was aware of Woods' lawsuit against the prison doctor, there is no evidence of any adverse action on the part of Morris, and as such, the absence of any causal link between any conduct of Morris and Woods' protected conduct. As Woods' retaliation claim

fails, Morris is entitled to judgment in his favor.

**V.      Conclusion**

For the reasons set forth herein, the Court will grant Defendants' Motion for Summary Judgment (ECF No. 95) as to the First Amendment claim asserted against them and enter judgment in their favor and against Woods.

An appropriate order will follow.


Dated: May 25, 2023                         BY THE COURT:

                                            /s/ Patricia L. Dodge
                                            PATRICIA L. DODGE
                                            United States Magistrate Judge